IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Margueritte Timms, | ) | C/A No. 3:18-cv-01495-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| USAA Federal Savings Bank, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Defendant USAA Federal Savings Bank ("Defendant") Motion for Summary Judgment ("Motion") on Plaintiff Margueritte Timms's ("Plaintiff") Telephone Consumer Protection Act ("TCPA") and negligent, reckless, and/or wanton training and supervision claims. [ECF No. 64.] For the reasons set forth below, the court grants Defendant's Motion.

**PROCEDURAL BACKGROUND**

Plaintiff instituted this action on June 1, 2018, seeking to recover damages from Defendant for alleged violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, alleged violation of the TCPA, 47 U.S.C. § 227 *et seq.*, invasion of privacy, and negligent, reckless, and/or wanton training and supervision related to the two statutory claims. [ECF No. 1.] All of Plaintiff's claims relate to two credit card accounts, the first of which was opened by Plaintiff's husband, Alan Timms, in 2011. The undisputed facts related to the accounts and to Plaintiff's claims are outlined in the court's prior order dated August 20, 2020. [ECF No. 58.] In the interest of judicial economy, and to the extent relevant, the court incorporates those undisputed facts by reference herein.

1

The court's August 20, 2020 Order addressed cross-motions for summary judgment.[1]  *Id.*  The court ruled in Defendant's favor on the FCRA and invasion of privacy claims.  *Id.*  As to the TCPA and training and supervision claims, the Court denied both parties' motions without prejudice to refile following the U.S. Supreme Court's opinion in *Facebook, Inc. v. Duguid*.

At the time the parties filed,[2] and the court heard, the cross-motions for summary judgment, there was a circuit split over the definition of "automatic telephone dialing system" ("ATDS"). The Ninth, Second, and Sixth Circuits held that an ATDS is "equipment which has the capacity— (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)[.]"  *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 290 (2d Cir. 2020); *Allan v. Penn. Higher Ed. Assistance Agency*, 968 F.3d 567, 579 (6th Cir. 2020).  In contrast, the Third, Seventh, and Eleventh Circuits held that an ATDS is equipment that stores or produces telephone numbers using a random or sequential number generator—the clause "using a random or sequential number generator" modifies both "store" and "produce."  *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 468 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020); *Dominquez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018).

---

[1] Plaintiff moved for partial summary judgment, seeking judgment in her favor on the FCRA claims and on the question of whether Plaintiff revoked her consent to be called for purposes of the TCPA claim. [ECF No. 34.]  Defendant moved for summary judgment on all claims.  [ECF No. 33.]

[2] At the time of filing, the only circuits that had decided the question were the Ninth and the Third Circuits.  While the motions were pending, the Second, Sixth, Seventh, and Eleventh Circuits issued opinions on the issue.  [ECF Nos. 47, 51, 56 (filing of supplemental authority).]

On July 9, 2020,[3] the U.S. Supreme Court granted certiorari in *Facebook v. Duguid* to answer the following question: Whether the definition of ATDS in the TCPA encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "us[e] a random or sequential number generator." 141 S. Ct. 192 (2020); [ECF No. 57-1.] The answer to that question would resolve the circuit split and, potentially, be dispositive of Plaintiff's claims in this case.

On April 1, 2021, the Court issued its decision. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). It held that the clause "using a random or sequential number generator" in the statutory definition of ATDS, 47 U.S.C. § 227(a)(1), modifies both "store and "produce," thereby "specifying how the equipment must either 'store' or 'produce' telephone numbers." *Id.* at 1169. Thus, "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Id.* at 1173.

On April 15, 2021, Defendant filed the Motion that is the subject of this Order. [ECF No. 64.] Plaintiff responded on April 29, 2021, and Defendant submitted a reply on May 17, 2021. [ECF Nos. 65, 66.] The matter is, accordingly, fully briefed and ripe for resolution by this court.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l*

---

[3] The court held a hearing on the cross-motions for summary judgment on May 21, 2020. Shortly after the hearing, the U.S. Supreme Court granted certiorari in *Duguid*. The August 20, 2020 Order acknowledged the circuit split and the grant of certiorari in *Duguid*. [ECF No. 58 at pp.33–36.] As a result, it stayed the TCPA and corresponding common law training and supervision claims pending a decision in *Duguid*. *Id.*

3

*Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

**ANALYSIS AND DISCUSSION**

As noted above, the two remaining claims in this case are for alleged violation of the TCPA and negligent and reckless/wanton training and supervision premised on the purported TCPA violation. If this court concludes that Defendant's dialing system does not satisfy the statutory definition of an ATDS as clarified by *Duguid*, Plaintiff's remaining claims fail, and Defendant is

4

entitled to judgment as a matter of law. Accordingly, the court will begin its analysis with *Duguid*, specifically as it relates to the evidence in the record.

## I. TCPA.

"The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls." *Stewart v. T-Mobile USA, Inc.*, 124 F. Supp. 3d 729, 732 (D.S.C. Aug. 28, 2015) (citing *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013)). It makes it unlawful for any person "to make any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system [ATDS] . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). At issue here is whether the systems at issue qualify as an ATDS.

An ATDS is statutorily defined as "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). As clarified by the Supreme Court in *Duguid*, "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." 141 S. Ct. at 1173.

In the present case, Plaintiff's claims relate to debt collection calls beginning in or around December 2016. [ECF No. 1., Compl. at ¶ 42.] Plaintiff alleges that over the course of ten months, Defendant "carried out a systematic campaign of harassment against Plaintiff by calling Plaintiff at least one hundred fifty-five (155) times." *Id.* at ¶ 46; *see also id.* at ¶¶ 45, 47–64. Further, Plaintiff contends the calls were made without her consent. *Id.* at ¶ 62.[4] Plaintiff's TCPA claim seeks statutory damages for each allegedly violative call. *Id.* at ¶¶ 81, 84. The training and

---

[4] If the court determines the calls were not made using an ATDS, it need not reach the issue of consent.

supervision claims are premised on the TCPA violations and seek damages to compensate Plaintiff for "damage to her credit and credit reputation, fear, frustration, humiliation, loss of sleep, anxiety, worry, nervousness, physical sickness, headaches, physical and mental suffering, pain, and anguish." *Id.* at ¶¶ 97, 102.

Defendant's Motion submits that it is entitled to judgment as a matter of law on the TCPA claim because it did not use an ATDS when it phoned Plaintiff. [ECF No. 64.] As outlined in the Declaration of Michelle Deneen, Defendant used dialing equipment known as Aspect Unified IP ("Aspect UIP") and Aspect Agent Initiated Contact ("Aspect AIC") to phone Plaintiff. [ECF No. 64-1, Deneen Decl. at ¶ 5.] According to Defendant, neither are capable of generating random telephone numbers or generating sequential blocks of telephone numbers. *Id.* at ¶ 6. Defendant's system works as follows:

- Telephone numbers of all members are stored in the Aspect Advanced List Management ("ALM"). *Id.* at ¶ 7.

- Each day, Defendant's representative identifies accounts he or she wishes to call the next day based on different criteria, such as "account is overlimit, the period of delinquency, [or] the amount of debt." *Id.* at ¶¶ 8, 9.

- ALM creates a list of telephone numbers for members matching those criteria. *Id.* at ¶ 9.

- The numbers are then transferred to Aspect UIP or Aspect AIC. *Id.* at ¶ 10.

- Numbers are dialed from those pre-created lists. *Id.* at ¶ 11.

- If the Aspect UIP system is used, the Aspect UIP system dials the numbers. If a person answers, the call is connected to a live representative. *Id.*

- If the Aspect AIC system is used, the representative initiates the call to a specific number on the list. *Id.* at ¶ 12.

The difference between Aspect UIP and Aspect AIC is who initiates the call—the system itself (Aspect UIP) or a representative (Aspect AIC). Regardless, however, neither system "store[s] or produce[s] telephone numbers using a random or sequential number generator." *Id.* at ¶ 13. Instead, both dial numbers from a specific list of numbers provided to them. *Id.*; [*see also* ECF No. 64-2 at p.9.] Given these characteristics, Defendant argues its systems do not qualify as ATDSs as a matter of law. Additionally, because Plaintiff's training and supervision claims are premised on TCPA violations, Defendant argues those claims also fail. [ECF No. 64-2 at pp.11–12.]

Plaintiff submits two arguments in response to Defendant's position that the Aspect UIP and Aspect AIC are not ATDSs. First, Plaintiff argues the dialer at issue must only have the *capacity* to store or produce numbers using a random or sequential number generator, and Defendant's internal documents establish that the Aspect UIP has that capacity. Second, Plaintiff relies on footnote 7 in the *Duguid* opinion to assert that the Aspect UIP has capabilities that render it an ATDS. According to Plaintiff, footnote 7 leaves open the possibility that the Aspect UIP's ability to use a random number generator to determine the order in which numbers are dialed from a preproduced list may qualify it as an ATDS. The court addresses each, in turn, below and ultimately declines both arguments.

### A. Defendant's Internal Documents.

First, the court agrees with Defendant that the mere fact that its internal documents called the Aspect UIP an "auto-dialer" does not in and of itself impact whether Aspect UIP's functions actually qualify it as an ATDS pursuant to the statutory definition and *Duguid*. However, the internal documents and policies may be relevant to the extent they show whether the Aspect UIP's functions allow it to store telephone numbers using a random or sequential number generator or

produce telephone numbers using a random or sequential number generator. If the documents evidence as much, there may be a genuine dispute as to a material fact. Here, however, the portions of the internal documents relied upon by Plaintiff do not serve as evidence of either capability, and there remains no genuine dispute as to any material fact.

Plaintiff first focuses on the fact that the documents evidence that the Aspect UIP dials numbers automatically without the assistance of an agent. [ECF No. 65 at p.8.] As we learned from *Duguid*, the automatic dialing capability alone is not enough to qualify a system as an ATDS. 141 S. Ct. at 1168–69 (reversing the Ninth Circuit's judgment that "held that Duguid had a claim under the TCPA by alleging that Facebook's notification system automatically dialed stored numbers"). The system at issue must store numbers using a random or sequential number generator or produce numbers using a random or sequential number generator to qualify as an ATDS. *Id.* at 1169 ("Because Facebook's notification system neither stores nor produces numbers 'using a random or sequential number generator,' it is not an autodialer.").

Plaintiff then turns to and relies on the documents' reference to a "predictive mode," by which calls are made using an algorithm that predicts when an agent will be available to take the call. [ECF No. 65 at p.8.] Again, the fact that the Aspect UIP can automatically dial numbers on a preset list based on the number of agents available is not evidence that the Aspect UIP stores or produces telephone numbers using a random or sequential number generator. This argument is nothing more than a rehash of the now-rejected Ninth Circuit conclusion that to qualify as an ATDS, a system "need only have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'" *Duguid*, 141 S. Ct. at 1168 (internal citation omitted)). Just as the Supreme Court rejected the conclusion in *Duguid*, this court must reject it here.

8

Finally, Plaintiff relies on the Aspect UIP's "blaster" setting, which allows automatic dialing with transfer to a pre-recorded voice. [ECF No. 65 at p.8.] This argument has no relevance here. Plaintiff concedes that the only mode at issue in this case is the "predictive mode." *Id.* ("Defendant's policy makes clear that calls made by Defendant are made under Aspect's predictive mode.").[5] The court already rejected the argument that the predictive mode operates as an ATDS.

In sum, and despite Plaintiff's contentions to the contrary, the internal documents evidence that Defendant's system operates exactly as it is outlined in Michelle Deneen's Declaration—telephone numbers of members from a pre-created list of targeted accounts are automatically dialed or dialed by an agent. Plaintiff's evidence fails to even suggest that the Aspect UIP[6] stores numbers using a random or sequential number generator or produces numbers using a random or sequential number generator.

**B. Footnote 7: *Duguid*.**

Next, the court turns to Plaintiff's reliance on footnote 7 in *Duguid*. Plaintiff argues that even though the Aspect UIP was using a stored list of numbers that were not randomly generated, it can still qualify as an ATDS if it "use[d] a random number generator to determine the order in which to pick phone numbers from a preproduced list." [ECF No. 65 at p.7 (citing *Duguid*, 141 S. Ct. at

---

[5] Further, to the extent Plaintiff places some weight on the fact that the "blaster" setting includes the capability of using a pre-recorded voice, the court notes it is inapposite. Plaintiff does not allege a violation of the TCPA's prohibition on pre-recorded voices, and the only evidence in the record establishes that "[n]one of [the] calls to Plaintiff were artificial/prerecorded calls[.]" Deneen Decl. at ¶ 4.

[6] Plaintiff focuses on the calls made by Aspect UIP, tacitly conceding that the Aspect AIC is not an ATDS following *Duguid*. The court, in turn, focuses its attention on Aspect UIP as well. However, to the extent there is any question regarding whether the Aspect AIC is an ATDS, the court finds that it is not, as a matter of law. There is no evidence in the record to give the slightest suggestion that the Aspect AIC stores or produces numbers using a random or sequential number generator. Deneen Decl. at ¶ 12 ("[T]he Aspect AIC is a manual-only dialing system that requires an agent to physically initiate the call to a specific number on the list.").

9

1172 n.7).] Plaintiff contends, without explanation or supporting evidence, that the Aspect UIP operates in that manner. Again, the court must disagree.

At the outset, the court acknowledges a fatal inconsistency in Plaintiff's argument. In the "Statement of Facts" (which appears three pages prior to the argument), Plaintiff states that "ALM specifically determines the order in which telephone numbers are dialed," it "specifically generates the numbers in a *sequential order* to be called and then sends those telephone numbers to the Aspect UIP system for actual dialing," and it "specifically sets the *sequential order* from which the telephone numbers are dialed." *Id.* at p.4 (emphasis added). And then just two pages after Plaintiff makes her argument regarding footnote 7, she again concedes that "the Aspect Dialer is an Automated Outbound Dialing service in which outbound calls are made based on telephone numbers which are stored and then generated *in a sequential order* by ALM to be dialed by Aspect UIP." *Id.* at p.9 (emphasis added). If the numbers are in "sequential order to be called . . . [by] the Aspect UIP," *id.* at p.4, neither ALM nor the Aspect UIP are "us[ing] a random number generator to determine the order in which to pick phone numbers from a preproduced list." *Duguid*, 141 S. Ct. at 1172 n.7.

As stated by Plaintiff in her own recitation of the facts, the "ALM *specifically determines the order* in which telephone numbers are dialed." [ECF No. 65 at p.5; *see also* ECF No. 66 at p.4 ("Plaintiff argues that Exhibit 5 . . . shows that 'ALM specifically determines the order in which telephone numbers are dialed.' This is absolutely true[.]") (emphasis added).] Because there is no evidence that the Aspect UIP randomly selected the dialing order of the telephone numbers from the predetermined list, Plaintiff's reliance on footnote 7 is misplaced.

Moreover, the court finds that Plaintiff takes footnote 7 out of context. Footnote 7 appears in a section of the opinion discussing whether the application of traditional rules of interpretation

lead to a "'linguistically impossible' or contextually implausible outcome." 141 S. Ct. at p. 1171. Therein, the Court recognized Duguid's "valiant effort to prove as much," but ultimately concluded the effort fell short of reaching the goal. *Id.* The Court acknowledged that while "it is odd to stay that a piece of equipment 'stores' numbers using a random number 'generator,'" the concept "is less odd as a technical matter." *Id.* at 1172. It then looked to a piece of equipment used in 1988, which "used a random number generator to store numbers to be called later (as opposed to using a number generator for immediate dialing)." *Id.* Footnote 7 follows the reference to that 1988 equipment.

In footnote 7, the Court specifically addressed Duguid's superfluity argument, *i.e.*, that a device that stores numbers using a random or sequential number generator would necessarily produce those numbers using the same process. *Id.* at 1172 n.7. The Court concluded that this is "no superfluity," if "Congress [] include[d] both functions in the autodialer definition so as to clarify the domain of prohibited services." *Id.* (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 n.7 (1994)). It followed with an example: "[A]n autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list." *Id.* It is this language on which Plaintiff relies to argue that the Aspect UIP is an ATDS. But yet again, this court cannot agree.

The Supreme Court followed the example with a reference to page 19 of the Professional Association for Customer Engagement ("PACE")'s amicus brief. *Id.*[7] There, PACE described

---

[7] Preceding the citation is a "See" signal. *Duguid*, 141 S. Ct. at p.1172 n.7. As outlined in The Bluebook, the "See" signal is used when "[c]ited authority *clearly supports* the proposition." The Bluebook: A Uniform System of Citation 62 (Harvard Law Review Ass'n et al. eds. 21st ed. 2020) (emphasis added). It is "used instead of '[no signal]' when the proposition is not directly stated by the cited authority but obviously follows from it; there is an inferential step between the authority cited and the proposition it supports." *Id.* Thus, looking to the specific page of the cited amicus brief to assess and interpret the meaning of the disputed sentence is fitting.

11

how the 1988 technology, specifically the '028 Patent, worked. [ECF No. 66-2, PACE Amicus Brief.] It explained that the 1988 technology functions, in part, by creating an "array" or list of telephone numbers that is sequentially generated and stored. *Id.* at p.18.[8] In a separate step, the equipment randomly generates a number, *e.g.*, the number 13. That number is used to identify the number to be stored or called. Stated differently, the 13th number in the sequentially generated telephone number list is then produced for dialing or storage. *Id.* at p.19 ("A telephone number in the array is identified by the randomly generated number and then produced for creating sequential records in operation 32, which are then dialed or stored in operation 34."). As noted on page 19 of PACE's amicus brief, "[t]he randomly generated number is not necessarily dialed *per se* but can be used to produce the corresponding sequentially generated number from the array, which in turn is used to create the record that is dialed or stored." *Id.* Again, using the example of a randomly generated number 13, it explains that "the 13th sequentially generated telephone number in the array is selected for immediate or delayed dialing." *Id.*

Following the above explanation of the then-existing technology, this court must conclude that footnote 7 does not support Plaintiff's argument. This court believes the Supreme Court's statement—that an "autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list" and "then store those numbers to be dialed at a later time"—refers to the process as explained by PACE on page 19 of its amicus brief. And, as a result, the "preproduced list," *Duguid*, 141 S. Ct. at 1172 n.7, is one that is "sequentially

---

[8] An example of a sequentially generated list of telephone numbers would be 111-111-111, 111-111-112, 111-111-113, etc. *See Gragg v. Orange Cab Co., Inc.*, 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014); [*see also* ECF No. 66-2 at p.18 n.4 (noting distinction between "sequential processing/dialing of telephone numbers in a list" and "dialing sequentially generated numbers").]

generated and stored." [ECF No. 66-2 at p.18.] Because the "preproduced list" in this case is <u>not</u> one that is "sequentially generated and stored," the language from footnote 7 is inapposite.

Having considered Plaintiff's arguments and the undisputed facts in the record, this court concludes that Defendant is entitled to judgment as a matter of law on the TCPA claim. There is no evidence that the Aspect UIP or Aspect AIC store numbers using a random or sequential number generator or produce numbers using a random or sequential number generator. Both systems "are capable of making telephone calls only to specific telephone numbers from dialing lists created and loaded by" Defendant. Deneen Decl. at ¶ 6. They "cannot store or produce telephone numbers suing a random or sequential number generator." *Id.* at ¶ 13. As a result, and in accordance with *Duguid*, the court hereby concludes that the Aspect UIP and Aspect AIC are not ATDS, and it grants summary judgment in favor of Defendant on the TCPA claim.

## II. Negligent and Reckless/Wanton Training and Supervision: TCPA.

The final claims at issue are those for negligent and reckless/wanton training and supervision. Just as Plaintiff's TCPA claim fails, the negligent and reckless/wanton training and supervision claims must also fail. Because Plaintiff's training and supervision claims relate solely to the purported TCPA violations, and this court concludes that Defendant is entitled to judgment as a matter of law on the TCPA claim, the training and supervision claims fails a matter of law.

### CONCLUSION

For the foregoing reasons, Defendant USAA Federal Savings Bank's Motion for Summary Judgment, [ECF No. 64], is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

June 9, 2021
Florence, South Carolina